```
       IN THE UNITED STATES DISTRICT COURT
     FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**CANAL INSURANCE COMPANY,**

      **Plaintiff,**

**v.**                              **//   CIVIL ACTION NO. 1:15CV127**
                                                              **(Judge Keeley)**

**DENZIL CARPENTER, RHONDA CARPENTER,
JOHN COCHRAN, MARSHA CARPENTER,
individually and as next friend
and parent of S.C., a minor,
CLARKSBURG MACK SALES & SERVICE,
INC., JAMES HERRINGTON, individually
doing business as JRH Trucking, LTD.,**

      **Defendants.**

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 32] AND DENYING
<u>THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 31]</u>**

Pending before the Court in this declaratory judgment action are cross-motions for summary judgment. The question presented is whether a flatbed truck owned by the repair shop and driven by James Herrington to retrieve his repaired coal truck qualifies as a "temporary substitute auto" under the insurer's policy. The plaintiff, Canal Insurance Company ("Canal") seeks a declaration that its commercial auto policy, issued to JRH Trucking, Ltd. ("JRH"), does not cover a Mitsubishi flatbed truck loaned to James Herrington ("Herrington") by Clarksburg Mack Sales & Services, Inc. ("Clarksburg Mack"). For their part, Herrington and JRH seek a declaration that the flatbed truck qualifies as a "temporary substitute auto," entitling them to liability coverage.

CANAL INS. CO. V. CARPENTER, ET AL.					1:15CV127

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 32] AND DENYING
THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 31]**

**FACTUAL BACKGROUND**

In late July 2013, Herrington, who owns JRH, called Clarksburg Mack to request repairs on one of his Mack coal trucks ("the coal truck") (Dkt. No. 31-1 at 2). On July 24, 2013, Dave Garrett ("Garrett"), a mechanic employed by Clarksburg Mack, drove a Mitsubishi flatbed truck ("the flatbed truck") owned by Clarksburg Mack to JRH's facility in Morgantown, West Virginia. Id. Garrett was unable to fix the coal truck on site, and determined that he would need to transport the truck to Clarksburg Mack's garage for repairs. Id. Herrington asked Garrett to drive the coal truck back to the garage, and Garrett received permission from Clarksburg Mack to leave the flatbed truck at JRH's facility. Id. Garrett left the keys in the flatbed truck, but did not give Herrington permission to use the vehicle. Id. Based on past practice, Herrington understood that he was only authorized to use the flatbed truck to drive to Clarksburg Mack to pick up his coal truck once it was repaired. Id.

On Friday, July 26, 2013, Tom Quinn ("Quinn"), Clarksburg Mack's Service Manager, called Herrington to report that the coal truck was operative and ready to be picked up. Id. at 3. He gave Herrington the option of waiting until Monday, when a Clarksburg

**CANAL INS. CO. V. CARPENTER, ET AL.**                                 **1:15CV127**

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 32] AND DENYING
THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 31]**

Mack employee would be available to return the coal truck, or coming to Clarksburg to pick up the coal truck that day. Id. Herrington, who needed the coal truck early Monday morning, chose to pick up the coal truck that day. Id. Quinn gave him permission to drive the flatbed truck to Clarksburg Mack to retrieve the coal truck. Id.

On his way from Morgantown to Clarksburg, Herrington collided with the rear of Denzil Carpenter's vehicle, which was stopped at a red light (Dkt. No. 1 at 2-3). Carpenter's vehicle then collided with that of Jillian Long (Dkt. No. 1-4 at 3). Carpenter, along with his wife, Rhonda Carpenter, and their minor niece, S.C., sustained serious injuries. Id. at 3-4.

On March 23, 2015, the Carpenters and John and Marsha Cochran, on behalf of S.C., filed suit in the Circuit Court of Monongalia County, West Virginia, alleging negligence claims against Herrington and JRH (Dkt. No. 1 at 2). See Civil Action No. 15-C-202. Cincinnati Insurance Company, Clarksburg Mack's insurer, is defending Herrington and JRH in the state court lawsuit pursuant to a reservation of rights (Dkt. No. 31-1 at 3; Dkt. No. 1 at 4).

JRH is a named insured under a commercial trucking policy issued by Canal that was in effect from July 24, 2013, through July

3

**CANAL INS. CO. V. CARPENTER, ET AL.**  1:15CV127

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 32] AND DENYING
THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 31]**

23, 2014 (Dkt. No. 1 at 2). The Canal policy provides up to $1,000,000 of liability coverage. Id. On September 5, 2013, Canal issued a declination of coverage letter to JRH, denying coverage because the flatbed truck Herrington operated at the time of the accident was neither a "covered auto" nor a "temporary substitute auto." Id. at 4.

## PROCEDURAL HISTORY

On July 31, 2015, Canal filed suit in this Court, seeking a declaration that its policy does not cover the flatbed truck and that it has no duty to defend or indemnify Herrington or JRH in the state court action (Dkt. No. 1 at 5). On August 26, 2015, Herrington and JRH filed an answer; in addition, they filed a counterclaim against Canal seeking a declaratory judgment that coverage exists, and alleging statutory bad faith and common law bad faith (Dkt. No. 3). On October 21, 2015, following a scheduling conference in the case, the Court bifurcated the coverage question from any extra-contractual issues (Dkt. No. 21).

On February 12, 2016, Canal filed its motion for summary judgment, arguing that the flatbed truck is neither a "covered auto" nor a "temporary substitute auto" because it was not used as a replacement for the coal truck that was being repaired (Dkt. No.

4

**CANAL INS. CO. V. CARPENTER, ET AL.**                    1:15CV127

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 32] AND DENYING
THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 31]**

31). Three days later, Herrington and JRH moved for summary judgment, contending that they are entitled to coverage because Herrington was using the flatbed truck as a temporary replacement for the coal truck (Dkt. No. 32-1 at 12). The motions are now fully briefed and ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a), (c)(1)(A). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining the truth, and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the

5

**CANAL INS. CO. V. CARPENTER, ET AL.**                          **1:15CV127**

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 32] AND DENYING
THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 31]**

nonexistence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. Id. at 248–52

## ANALYSIS

The only disputed issue is whether the flatbed truck owned by Clarksburg Mack and operated by Herrington qualifies as a "temporary substitute auto" under the Canal policy. The policy, which provides $1,000,000 in commercial liability coverage to JRH as a named insured and Herrington as an insured driver, covers seven Mack trucks owned by JRH Trucking (Dkt. No. 22-2 at 3). It also provides additional liability coverage for vehicles that qualify as "temporary substitute autos." Id. The policy states, in relevant part:

6

**CANAL INS. CO. V. CARPENTER, ET AL.**                             1:15CV127

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 32] AND DENYING
THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 31]**

**A. COVERAGE**

Any "**temporary substitute auto**" that is loaned to the named insured will be considered a covered "auto" only for those coverages where an "X" is entered in the check-box in the Schedule of Coverages.

Id. (emphasis added). The policy's Schedule of Coverages includes an "X" in the check box for "Liability Coverage" (Dkt. No. 22-2 at 22).

With regard to liability coverage, the policy provides:

**Section II – Liability Coverage**

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which the insurance applies, caused by an "accident" and **resulting from the ownership, maintenance, or use of a covered "auto."**

(Dkt. No. 22-2 at 12) (emphasis added). The policy's liability coverage applies equally to any "covered auto," including a "temporary substitute auto." In other words, the policy extends the same liability coverage to "temporary substitute autos" as it does to Herrington's own coal trucks. Under the policy, a "temporary substitute auto" is defined to include,

7

**CANAL INS. CO. V. CARPENTER, ET AL.**                               1:15CV127

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 32] AND DENYING
THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 31]**

> [A]ny "auto" you do not own while used with the permission of its owner, who is engaged in the business of selling, leasing, repairing, or servicing "autos" **while such "auto" is used as a temporary replacement** for a covered "auto" you own that is out of service because of its:
>     1.   Breakdown,
>     2.   Repair, or
>     3.   Servicing

(Dkt. No. 22-2 at 23) (emphasis added). Accordingly, the temporary substitute auto provision gives rise to five requirements: (1) the "temporary substitute auto" must be owned by someone other than the insured; (2) the owner of the "temporary substitute auto" must be engaged in the business of selling, leasing, repairing, or servicing autos; (3) the "temporary substitute auto" must be used with the permission of its owner; (4) the "temporary substitute auto" must have been used as a "temporary replacement" for the insured's own vehicle; and (5) the insured's own vehicle must be out of service due to a breakdown, repair, or servicing. See id.

The parties agree that four out of the five requirements enumerated in the policy are satisfied: (1) Clarksburg Mack owned the flatbed truck operated by Herrington on July 26, 2013; (2) Clarksburg Mack is engaged in the business of "selling, leasing, repairing, or servicing" autos; (3) Clarksburg Mack gave Herrington permission to drive the flatbed truck; and (4) Herrington's coal

8

**CANAL INS. CO. V. CARPENTER, ET AL.**  1:15CV127

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 32] AND DENYING
THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 31]**

truck was "out of service because of its breakdown, service, or repair." See Dkt. No. 32-1 at 6-12; Dkt. No. 31-1 at 6. Accordingly, the only requirement in dispute is whether Herrington used Clarksburg Mack's flatbed truck as a "temporary replacement" for his coal truck.

Herrington and JRH argue that at the time of the accident, Herrington was using the flatbed truck as a "temporary replacement" for his disabled coal truck (Dkt. No. 32-1). Specifically, they contend that Herrington was driving the flatbed truck to Clarksburg Mack "in place of" his own vehicle in order to complete the repair cycle on his coal truck. Id. at 14-16. Canal argues, however, that the flatbed truck was not being used as a "temporary replacement" for the coal truck because Herrington's coal truck was primarily used for hauling coal (Dkt. No. 31-1 at 6-7). In other words, Canal essentially contends that the flatbed truck cannot be considered a temporary substitute auto because it "was not being used to haul coal." Id.

The Supreme Court of Appeals of West Virginia has not specifically addressed what constitutes a "temporary replacement" for an insured's own vehicle in the context of a temporary

9

**CANAL INS. CO. V. CARPENTER, ET AL.** 1:15CV127

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 32] AND DENYING
THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 31]**

substitute automobile provision. The United States Court of Appeals for the Fourth Circuit, however, has commented that

> [i]t is obviously the purpose of the ordinary substitute [auto] clause to cover an automobile temporarily **used to the same extent as** the automobile described in the policy but not to give the substitute vehicle a wider coverage.

Lumbermens Mut. Cas. Co. v. Harleysville Mut. Cas. Co., 367 F.2d 250, 254 (4th Cir. 1966) (emphasis added).

After careful consideration, the Court rejects Canal's argument that the flatbed truck was not being used as a "temporary replacement" for Herrington's own vehicle merely because "had the coal truck not been out of commission for repairs, [Herrington] would have had no reason to be driving to Clarksburg Mack." (Dkt. No. 31-1 at 8). A temporary substitute auto provision is in fact designed for that very purpose: to provide an insured with continuity of liability coverage where an automobile described in the insured's policy becomes unavailable for use due to "its breakdown, repair, or servicing," and, therefore, another vehicle must be temporarily used in its place. See 8A Steven Plitt et al., Couch on Insurance § 117.62 (3d ed.). To adopt Canal's circular reasoning would defeat the purpose of the temporary substitute auto

**CANAL INS. CO. V. CARPENTER, ET AL.**                          1:15CV127

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 32] AND DENYING
THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 31]**

provision in providing continued protection to the insured while his own auto is being repaired or serviced.

The cases Canal cites from other jurisdictions do not lead the Court to a contrary conclusion. For example, in <u>Spillers v. ABH Trucking Co., Inc.</u>, a Louisiana case, the court noted that a temporary substitute automobile "must be used for a limited time and in the same capacity as the vehicles insured by [the insurer] under the policy in question." 713 So.2d 505, 512 (La. App. 1998). The defendant, ABH, used its vehicles to transport lumber and sawdust. <u>Id.</u> Jason Slane, an ABH employee, drove his personal vehicle to repair one of ABH's stranded trucks. <u>Id.</u> He was making the second of three trips for the purpose of repairing the stranded truck when he was involved in an accident. <u>Id.</u> The court found that Slane's personal vehicle was not a "temporary substitute auto" within the meaning of the policy because it was not a substitute or replacement for the eighteen-wheel truck that was stranded. <u>Id.</u> at 513. The court did not indicate whether Slane ever used his pickup truck to travel to repair ABH vehicles.

Here, Canal's conclusion that Herrington must have used the flatbed truck to haul coal to be entitled to coverage is unpersuasive because it presumes that he <u>only</u> used his coal trucks

11

**CANAL INS. CO. V. CARPENTER, ET AL.**                                 **1:15CV127**

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 32] AND DENYING
THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 31]**

to haul coal.  See Dkt. No. 31-1 at 7.  The record reflects that Herrington sometimes drove his coal trucks to Clarksburg Mack himself to obtain service, undercutting Canal's assumption that those trucks were used exclusively to haul coal (Dkt. No. 32-6 at 3; Dkt. No. 32-3 at 2).  See Dkt. No. 36 at 3.

Here, Herrington was driving the Mitsubishi truck to Clarksburg Mack in order to obtain a necessary repair to his vehicle, precisely the same purpose for which Herrington would have driven any of his own vehicles, including the disabled coal truck, to Clarksburg Mack.  It is immaterial that the coal truck driven to Clarksburg Mack was not the vehicle (or the same type of vehicle) that actually required repair.  Plitt, supra, § 117.90.  It also does not matter that the purpose for which Herrington utilized the flatbed truck (i.e., completing a vehicle repair cycle) is not the only purpose for which he could have used a temporary substitute auto.  What does matter is whether Mr. Herrington's actual use of the substitute vehicle (the flatbed truck) was to the same extent as his use of the automobile described in the policy (the coal truck).  See Lumbermens, 367 F.2d at 254-55; Plitt, supra, § 117.89.  Because Herrington used the flatbed truck to the same extent as he used his own vehicle (i.e., driving to a repair shop

12

**CANAL INS. CO. V. CARPENTER, ET AL.** 1:15CV127

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 32] AND DENYING
THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 31]**

in order to complete an auto repair cycle), the Court concludes that the flatbed truck was used as a "temporary replacement" for Herrington's coal truck.

Because the Court finds that the policy language is clear, it need not address Herrington's alternative argument that the policy language is ambiguous.

In conclusion, for the reasons discussed, the Court **GRANTS** Herrington and JRH's motion for summary judgment (Dkt. No. 32), **DENIES** Canal's motion for summary judgment (Dkt. No. 31), and **DECLARES** that Herrington and JRH are entitled to liability insurance coverage under the Canal policy because the flatbed truck qualifies as a "temporary substitute vehicle." It **SCHEDULES** a status conference on **Thursday, June 16, 2016, at 10:00 A.M.** to schedule the remaining claims in the case.

It is so **ORDERED**.

**CANAL INS. CO. V. CARPENTER, ET AL.**                                          **1:15CV127**

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 32] AND DENYING
THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 31]**

The Court **DIRECTS** the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record and to enter a separate judgment order.

DATED: May 10, 2016.

                                                 /s/ Irene M. Keeley
                                                 IRENE M. KEELEY
                                                 UNITED STATES DISTRICT JUDGE